## Directors of the Poor of Danville and Mahoning, Plff. in Err., *v.* Trustees of State Hospital for the Insane at Danville.

The act of June 13, 1883 (P. L. 92), does not entirely relieve the various towns of the obligation to pay the expenses of their insane paupers while in the state hospital for the insane.

(Decided May 10, 1886.)

Error to the Common Pleas of Montour County to review a judgment for plaintiff in a case stated in the nature of a special verdict. Affirmed.

The following is the agreed statement submitted to the court for its opinion:

First: *A.* The State Hospital for the Insane at Danville was

NOTE.—Similar determinations are found in Danville State Hospital for Insane v. Bellefonte, 163 Pa. 175, 29 Atl. 901; Franklin Twp. v. Pennsylvania State Lunatic Hospital, 30 Pa. 522.

established in pursuance of act of assembly, April 13, 1868 (P. L. 90).

*B.* Plaintiff is a body corporate duly created by act of assembly March 27, 1873 (P. L. 54) ; and said hospital is a state institution supported mainly by appropriations from the state, but charging and receiving compensation from private parties for private patients and from the respective public officers for indigent insane.

Second. Defendant is a body corporate duly created by act of assembly May 8, 1854 (P. L. 654).

Third. There were at the time of bringing this suit, and have been for a long time before, and are now, in plaintiff's hospital, under care and treatment, having been duly and legally placed there by defendant, the following named indigent insane residents of defendant's poor district, *viz.:* John D. Rowe, Joseph Deutsch, Margaret Melaney, Mary Jacob, Susan C. Rishel, Rosina Menan, Joseph Oeschger, Sallie Shearer, and John Arnold.

Fourth. The following bonds duly executed and delivered by defendant to plaintiff were at the time of bringing this suit and are now held by plaintiff, *viz.:*

First bond, dated November 19, 1881, for payment of $3 per week for care and maintenance of above-named John D. Rowe. Payment to be made quarterly in advance, with interest from time payments become due, and costs of collection not exceeding 10 per cent. Defendant has paid plaintiff in full to December 7, 1883, for this patient.

Similar bonds were given for each of the other inmates above named, except John Arnold, the last of the patients above named, who became an inmate of said hospital under an order of the court of quarter sessions of Montour county, of December 19, 1872, requiring him to be maintained at expense of said county, as his residence was unknown; and the said court, on September 22, 1875, after hearing, made a further order fixing the residence of said John Arnold in the defendant's poor district above named, directing same to be certified. Defendant has paid plaintiff in full to November 26, 1883, for this patient.

Fifth. That the several sums still due for the care and treatment of said indigent insane at the time of bringing this suit are at the rate of $2 per week, for each of the nine patients

aforesaid, from the respective dates to which payments are above stated to have been made, *viz.:* John D. Rowe, from 7th December, 1883; Joseph Deutsch, from 10th December, 1883; Mary Jacob, from 27th November, 1883; Susan C. Rishel, from 1st January, 1884; Rosina Menan, from 29th November, 1883; Joseph H. Oeschger, from 24th November, 1883; Sallie Shearer, from 15th December, 1883; Margaret Melaney, from 24th November, 1883; John Arnold, from 26th November, 1883, together with interest and costs of collection as in said bonds provided.

Sixth. That by act of assembly, June 13, 1883 (P. L. 92, § 2), it is declared "that the cost *per capita* of the care and treatment of the indigent insane in state hospitals for the insane shall not exceed the sum of $3.50 a week; which shall include all charges except for clothing, for which the charge shall not exceed 50 cents for each week."

And by § 3 of the same act it is further declared "that the expense of the care and treatment of the indigent insane in the state hospitals for the insane shall be divided between the state and the county: Provided that the maximum charge to the county shall not exceed, including all charges, the sum of $2 a week for each person."

Seventh. That, prior to passage of said act, June 13, 1883, the plaintiff had fixed the sum of $3 per week as the amount to be charged for care and treatment of the indigent insane.

Eighth. That all the acts of assembly above referred to, as well as all parts of acts in said acts referred to, are to be considered as much a part of this case as if set forth in full herein.

Ninth. If the court be of opinion that the provisions of said act, June 13, 1883, relieve defendant from liability to plaintiff on the aforesaid bonds, and from all liability to plaintiff for the care and maintenance of the above-mentioned indigent insane persons from and after the date of approval of said act of assembly, then judgment to be entered for defendant. But if the court be not of that opinion, then judgment to be entered for plaintiff for amount found to be due.

Costs to follow judgment; either party reserving the right to sue out a writ of error therein.

ELWELL, P. J., delivered the following opinion of the court below:

The institution being a state institution, a public charity,

as appears by the act of April 13, 1868, establishing it, by the act of March 27, 1873 (Pamph. Laws, 54), incorporating it, and by the agreement set forth in the case stated, the legislature has unlimited power over its management, as well financially as otherwise.

The grounds were purchased and the buildings appropriated by law from the state treasury, and all deficiency in the expense of the care and management of insane patients committed to the care of the plaintiff has been supplied by state appropriations. The act of incorporation did not in any degree detract from the character of the hospital as a state institution. The officers having the control are appointed, and are merely agents of the state to conduct the affairs of the hospital according to the laws passed for its regulation.

The heads of the departments could not personally superintend the management of hospitals for the insane, and therefore from time to time, as the occasion required, new buildings have been erected and persons have been appointed to perform this service. The trustees in the case in hand are officers of the state, although nominally officers of a corporation. In all things pertaining to reception, management, treatment, and control of patients they possess the power of the state, and are clothed with its immunity. Before the passage of the act of June 13, 1883 (Pamph. Laws, 92), they were authorized to charge patients the sum that it cost per week to keep them. They were authorized by act of April 14, 1845 (Purdon's Digest, 1116), act of April 20, 1869 (Id. 1109), and by act of April 8, 1861 (Id. 1118), to receive persons who were ac. quitted of crime on the ground of insanity; persons who shall have been found unsafe to be at large, or who by reason of insanity are suffering unnecessary hardships; insane persons brought by friends, with proper certificates; and persons sent by the constituted authorities in the respective counties, districts, and townships of the commonwealth, such authorities being chargeable with the expense of the care and maintenance and removal to and from the asylum of such paupers.

In Franklin Twp. v. Pennsylvania State Lunatic Hospital, 30 Pa. 524, the law as it then stood was construed by the supreme court. Chief Justice Lowrie said: "It is plain, also, that the patients in the hospital are not to be supported out of the hospital funds, but by their friends or out of the funds

of the district from which they come. When sent by their friends there is to be a contract for their maintenance. When sent by order of government, through any of its functionaries, government regulates the compensation and directs its payment by the local functionaries charged with the duty of supporting those who need governmental care."

Under the law as thus construed, the district,—where insane persons had a settlement in any district in any county from which they were sent,—such district was liable, for the expense of keeping, directly to the hospital. It was found to be practically inconvenient for the hospital to look to the districts for payment; for remedy of which it was enacted by § 4 of the act of April 8, 1861 (Purdon's Digest, 1118, pl. 69), that the city or county from which an indigent insane person was sent to the hospital shall be liable to the trustees for the maintenance of such poor person; and shall have remedy over against the proper township, where, by the existing laws, the township is liable for the support of such pauper; and the overseers of the poor shall have remedy over against the property of the pauper, or against any relatives required by law to maintain him or her, to the extent of their ability, under the poor laws.

Henceforth, in every case where a district was before liable for the maintenance of an insane person, the liability, as between the hospital and the district, was transferred to the county, and the county was given a remedy for the amount which it had to pay against the district. Thus the law stood when the act of June 13, 1883 (Pamph. Laws, 92), was passed.

It was manifestly passed for the purpose of fixing the amount of charges for maintenance and clothing, and for relieving the county from the payment of one half the amount.

As we have seen, the county was liable for the whole amount. The 3d section of the act provides "that the expense of the care and treatment of the indigent insane in the state hospitals for the insane shall be divided between the state and the county; provided that the maximum charge to the county shall not exceed, including all charges, the sum of $2 a week for each person.

The act of 1861—in so far as it gives a remedy for the county over against the district chargeable for the amount the county is obliged to pay for—is not repealed by express words, nor by necessary implication. By the relief to the county of one half

that it was before liable for, there is no implication of intention to relieve the district of the whole amount for which it was before liable.

But reducing the amount which the county is required to pay reduces to the same extent the amount which the district has to pay. And this, in our view, is the proper construction of the act, and all that was intended to be accomplished by it.

In this case the trustees took from the directors of the poor of Danville and Mahoning an obligation in the case of each indigent insane person chargeable to that district, to pay $3 per week for the care and support of the pauper as long as he continued a patient in the hospital; also to pay not exceeding $50 for any damages which this patient might do to the furniture.

The amount fixed by the hospital as the cost of board per week was $3. For that sum per week the district was chargeable without a written obligation. The taking of the obligation did not increase the liability of the district beyond that prescribed by law; nor did it diminish or lessen the liability of the county.

Where indigent insane are sent to the hospital by the constituted authorities, the trustees have no authority to take securities and release the county from its liability. It follows that in all cases where the county is liable under the law in the first instance, with remedy over, a release of the county by law, in whole or in part, is a discharge *pro tanto* of the liability of the district. And to that extent only was the statute of 1883 intended to have effect.

It was competent for the legislature to provide for the payment of the entire expense of the maintenance of the insane of this state out of the state treasury, or by the county, or by the district from whence they came. But when the whole scope of legislation and the decision under it is that the district shall be ultimately liable for the maintenance of its indigent insane, the county being first liable with remedy over, the mere reduction of the amount which shall be paid by the county is not a total discharge of the statutory obligation of the district, nor of its voluntary obligation to the hospital. To the extent of the relief given by law to the county it is relieved, but no further.

The defendant, not having paid for the support of the indigent insane placed by it in the hospital and there maintained since June 13, 1883, is chargeable with the amount for which

by the act of assembly of that date, the county of Montour is liable.

And now, April 2, 1886, judgment for the plaintiff for the sum of $2,122.45, with interest from January 26, 1886.

The defendant brought error.

*H. M. Hinckley* for plaintiff in error.

*L. E. Waller* for defendant in error.

PER CURIAM:
This case is affirmed, for reasons given in the opinion of the learned judge of the court below.